951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee
v.
Ronald Edward MCKINNEY, Defendant-Appellant
 No. 91-5227.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before KEITH, DAVID A. NELSON and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 On January 22, 1991, in accordance with the Pre-sentence Report ("PSR") and the United States Sentencing Guidelines ("Guidelines"), defendant-appellant. Ronald Edward McKinney ("defendant"), was sentenced to seventeen (17) months imprisonment and three (3) years supervised release and was ordered to pay $43,000.00 restitution. On appeal, defendant alleges: (1) the district court's application of the amended Specific Offense Characteristics Table ("Table") contained in the Fraud and Deceit Guidelines § 2F1.1(b) violates the ex post facto clause of the United States Constitution; and (2) the district court's holding that defendant's two 1990 fraudulent loan applications were relevant conduct under Guidelines § 1B1.3(a)(2) and properly used in the calculation of defendant's sentence was clearly erroneous. For the following reasons, we affirm the district court.
 
 FACTS
 
 2
 On August 15, 1990, a twelve count indictment was returned charging that defendant devised a scheme to defraud and used the mails to further this scheme. Listed were specific instances of defendant's use of the mails to obtain money and property by false and fraudulent pretenses, representations and promises. On October 23, 1990, defendant pled guilty to count one of the indictment pursuant to a plea agreement that dismissed the remaining eleven counts.[1]
 
 
 3
 In the PSR, calculation of defendant's base offense level was based on the Table in effect since the November 1, 1989, Guidelines amendments. The pre-November 1, 1989, Table provided for a five level increase for losses ranging between $50,001.00 and $100,000.00, while the post November 1, 1989, Table provides for a six level increase for losses which are more that $70,000.00 but less that $120,000.00. Defendant argued that by pleading guilty only to count one, a June 20, 1989, offense, the Amended guidelines were therefore not applicable. Defendant objected to the application of the amended Guidelines as a violation of the Constitution's ex post facto clause.
 
 
 4
 In addition, acts of fraudulent conduct occurring after June 30, 1989, the latest particularized offense in the indictment, were used to calculate the PSR's sentence range. The district court held defendant's two August 1990 fraudulent loan applications to ITT and Sovran Bank for personal loans of $5000.00 and $15,000.00 respectively to constitute relevant conduct for sentencing purposes. First, by including the value of the loans, the total calculated loss caused by the fraudulent scheme was increased to $86,220.71, resulting in an increase from 11 to 12 as the base offense level. Second, because the defendant committed the relevant conduct while under a criminal justice sentence of probation, his criminal history category was raised two points, to level III.
 
 I.
 
 5
 This court reviews de novo the applicability of the Guidelines. United States v. Edgecomb, 910 F.2d 1309, 1311 (6th Cir.1990). Mail fraud cases which continue over a substantial time period are treated as continuing offenses. United States v. Purther, 823 F.2d 965, 968 (6th Cir.1987). When an offense begins before but continues after the effective date of a Guideline or amendments thereto, the most recent Guideline applies. See United States v. Barger, 931 F.2d 359, 365 (6th Cir.1991). Any objection to the dates of the offense as charged should be made before entering a guilty plea. Edgecomb, 910 F.2d at 1312.
 
 
 6
 The district court's finding that defendant's scheme continued beyond November 1, 1989, is supported by the evidence. First, at the hearing, the parts of the indictment relevant to defendant's guilty plea were read in court with no objection. This included the charge of defendant's engaging in a scheme to defraud from September 1985 to May 1990. Second, additional proof was offered showing defendant's 1990 attempts to obtain loans by using false information on the loan applications. Finally, defense counsel conceded to the court that the scheme did continue into 1990. When defendant pled guilty to count one, this included the charge of engaging in a continuing credit fraud scheme for five years. See United States v. Broce, 488 U.S. 563 (1989). Thus, since defendant's offense continued past the effective date, the district court's application of the November 1, 1989, Guidelines does not violate the Constitution's ex post facto clause. See United States v. Walton, 908 F.2d 1289, 1299 (6th Cir.1990).
 
 II.
 
 7
 Whether a defendant's actions amount to relevant conduct under the Guidelines is a question of fact subject to a clearly erroneous standard. United States v. Kappes, 936 F.2d 227, 229 (6th Cir.1991). Under Guidelines § 1B1.3(a)(2), all "relevant conduct" as applied to fraud and deceit, shall be grouped to determine the specific offense characteristics relevant to calculating the base offense level. See U.S.S.G. § 3D1.2(d). Relevant conduct includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of the conviction." U.S.S.G. § 1B1.3(a)(2).[2] The phrase "same course of conduct" reflects that portion of Federal Rule of Criminal Procedure 8(a) that permits joinder of offenses that "are of same or similar conduct" or that involve "two or more acts or transactions connected together." United States v. Santiago, 906 F.2d 867, 872 (2d Cir.1990) (quoting Wilkens & Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C.L.Rev. 495, 515-516 (1990)). The Guidelines do not specifically define relevant conduct but seem to require only that there be "sufficient similarity between the criminal offenses and temporal proximity to reasonably suggest that they constitute a pattern of criminal conduct." Id. The court should consider all relevant offenses comprising the common scheme in the determination of the base offense level and the defendant's criminal history category in order to determine the Guidelines sentence range. See U.S.S.G. § 1B1.3(a)(2) and § 4A1.1(d).
 
 
 8
 Defendant's use of false social security numbers and false employment and personal information to obtain credit established the August 1990 loan application offenses as "relevant conduct" for the purposes of sentencing. The district court properly considered these acts in the calculation of defendant's sentence. The $20,000.00 value of the fraudulent loan applications increased the total loss calculated of $86,220.71, which was used to determine the base offense level. See U.S.S.G. 2F1.1.[3] The Guidelines provide that the calculated loss does not have to be precise, but a reasonable estimate of the range of loss, given the information available. U.S.S.G. § 2F1.1, Application Note 8. The district court properly determined there was a reasonable basis for believing the loss involved was more that $70,000.00 but less that & 120,000.00, resulting in an increase of six (6) in the base offense level. U.S.S.G. § 2F1.1(b)(2)(G).
 
 
 9
 In the PSR, defendant's sentence was calculated using criminal history category III. Pursuant to the Guidelines, two points were properly added to defendant's criminal history category on the basis that the fraudulent loan applications were part of the instant offense (as relevant conduct) and committed while defendant was on probation for a June 22, 1990, conviction for a bad check felony. U.S.S.G. § 4A1.1(d).[4]
 
 CONCLUSION
 
 10
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The defendant pled guilty to the following offense:
 From on or about September 15, 1985 until on or about May 31, 1990, devising and intending to devise a scheme and artifice for obtaining money and property, that is approximately $43,000, by means of false and fraudulent pretenses, representations and promises; and on 6/20/89, for the purpose of executing and attempting to execute the scheme and artifice, causing to be placed in an authorized depository for mail matter, a credit application in the name of Ronald Edward McKinney, Sr. containing false information, addressed to Bank One, Dayton, Ohio.
 
 
 [2]
 Guidelines § 1B1.3(a)(2) provides, in part, as follows:
 (a) Unless otherwise specified.... (ii) specific offense characteristics ... shall be determined on the basis of the following:
 (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 
 
 [3]
 Under Guidelines § 2F1.1, the base offense level is six (6), subject to adjustments
 
 
 [4]
 Guidelines § 4A1.1(d) provides, in part:
 Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.